UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,
As Broadcast Licensee of the **March 13, 2010,
Pacquaio/Clottey** Program,

                                  Plaintiff,

    -against-                                        REPORT AND
                                                                   RECOMMENDATION
AIDA M. ZEVALLOS, *et al.*,                            10 CV 4049 (ILG) (RML)

                                  Defendants.
-------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated January 6, 2011, the Honorable I. Leo Glasser, United States District Judge, referred plaintiff's motion for a default judgment against defendants Aida M. Zevallos[1] and Meena's House Café, Inc., d/b/a Meena's House Café a/k/a Meena House Café ("Meena's House Café"), to me to conduct an inquest and issue a report and recommendation on the issue of damages. For the reasons stated below, I respectfully recommend that plaintiff be awarded $13,188 in damages and $1,260 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff J & J Sports Productions, Inc. ("plaintiff" or "J & J Sports"), brought this action in September 2010 alleging violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (1996). Plaintiff alleges that defendants procured or received pay-per-view cable television services without authorization or consent. (Complaint, dated Aug. 26, 2010 ("Compl."), ¶¶ 20-21.) After defendants failed to appear or answer in this action, plaintiff moved

---

[1] Plaintiff later moved to partially dismiss the suit as against Aida M. Zevallos. Judge Glasser granted the dismissal by order dated December 30, 2010.

for entry of a default judgment. On January 6, 2011, Judge Glasser referred the motion to me. By order dated January 13, 2011, I gave plaintiff the opportunity to supplement its inquest submission on or before January 31, 2011, and directed Meena's House Café to file any opposition on or before February 25, 2011. To date, the court has received no communication from defendants.

An affidavit of service indicates that plaintiff served defendant Meena's House Café with copies of the summons and complaint. (See Affidavit of Diane Koehler, sworn to Oct. 4, 2010.) On January 4, 2011, the Clerk of the Court certified defendants' default. (See Clerk's Certificate of Default, dated Jan. 4, 2011.) I therefore respectfully recommend that plaintiff's motion for a default judgment be granted.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 587 (E.D.N.Y. 1997). Plaintiff's allegations are as follows:

Plaintiff is a California corporation that owns the commercial distribution rights to the March 13, 2010 Pacquaio/Clottey prizefight broadcast ("the Event"). (Compl. ¶ 17.) The Event was transmitted via closed-circuit television and by encrypted satellite signal. (Id.) For a fee, a customer could receive an unscrambled signal and display the Event to its patrons. (Id. ¶ 18; see also Plaintiff's Memorandum of Law, dated Jan. 4, 2011 ("Pl.'s Mem."), at 2.) Plaintiff does not list the minimum licensing fee for commercial establishments in its complaint, its legal

2

memorandum, or its affidavit.

Defendant Meena's House Café is a business located at 476 Bayridge Avenue, Brooklyn, New York. (Compl. ¶ 12.) Plaintiff sent an independent auditor, Constantinos Charidemou, to the establishment during the broadcast of the Event. (Affidavit of Constantinos Charidemou, sworn to Mar. 15, 2010 ("Charidemou Aff.") attached as Exhibit C to the Affidavit of Joseph Gagliardi, sworn to Nov. 22, 2010 ("Gagliardi Aff.").) At 12:13 a.m. on March 14, 2010, Charidemou entered Meena's House Café. There, he observed one television showing the Event and approximately eighty patrons in the establishment. (Id.)[2] He estimated the capacity of the establishment to be 100 persons. (Id.) Defendants had not contracted with plaintiff to receive or display the Event, and they were not otherwise authorized to display it. (Gagliardi Aff. ¶¶ 6, 8.) Plaintiff asserts that the only way the Event could have been shown in the establishment was if an owner or an agent intentionally committed a wrongful act to receive the satellite signal. (Id. ¶ 9.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), and enhanced statutory damages of $20,000 under § 605(e)(3)(C)(ii). (Pl.'s Mem. at 9.) Plaintiff further seeks attorney's fees and costs of $1,860.00 under § 605(e)(3)(B)(iii). (See Affidavit of Julie Cohen Lonstein, Esq., sworn to Jan. 4, 2011 ("Lonstein Aff."), ¶ 8).)

---

[2] Charidemou made three headcounts between 12:13 a.m. and 12:17 a.m., finding eighty patrons present each time. (Charidemou Aff.)

**DISCUSSION**

1. <u>Statutory Damages</u>

Plaintiff seeks damages for violation of 47 U.S.C. § 605(a), which states, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. <u>See</u> 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. <u>See</u> 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff has elected to recover statutory damages under § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." (<u>See</u> Pl.'s Mem. at 7.) The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); <u>see also</u> <u>Home Box Office v. Champs of New Haven, Inc.</u>, 837 F. Supp. 480, 484 (D. Conn. 1993).

Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. <u>See</u> <u>Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.</u>, No. 10-CV-108, 2011 WL 889474, at *5 (E.D.N.Y. Feb. 14, 2011) (awarding $54.95 per patron for

the 150 patrons present at an unauthorized broadcast); J&J Sports Prods., Inc., v. Hot Shots, Inc., No. 09-CV-1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (assessing damages based on a per-person charge for forty to fifty patrons present); Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159, at *11 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Id.

Numerous decisions in this district have used as the base per-person valuation the residential fee for the fight, and multiplied that amount by the number of patrons in the establishment. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. 05-CV-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005); Garden City Boxing Club v. Morales, No. 05-CV-0064, 2005 U.S. Dist. LEXIS 22989, at *16 (E.D.N.Y. Aug. 18, 2005). This calculation is based on the assumption that each patron would have paid to view the fight from home had he or she not had access to a free broadcast at a neighborhood establishment. See Garden City Boxing Club, Inc. v. Bello, No. 05-CV-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005).

Plaintiff here did not provide information regarding the residential fee for the broadcast of the Event. In similar cases, however, judges in this district have awarded damages based on a residential fee of $54.95. See, e.g., J & J Sports Prods., Inc. v. Arhin, No. 07-CV-

5

2875, 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) (the "typical purchase price for a pay-per-view broadcast of this nature is $54.95"); Kingvision Pay-Per-View Ltd. v. Cazares, No. 05-CV-2934, 2006 WL 2086031, at *3-4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damage award based on $54.95 residential rate); Rosado, 2005 WL 3018704, at *4 (recommending statutory damage award of $989.10 based on $54.95 for each of the eighteen patrons observed in the establishment); Bello, 2005 WL 2496062, at *3 (recommending statutory damages based on $54.95 residential rate).

I find the per-patron valuation appropriate here. According to the report of the investigator, there were approximately eighty patrons present during the broadcast of the Event. (Charidemou Aff.) Eighty multiplied by $54.95 leads to an award of $4,396.00, over four times the statutory minimum. I therefore recommend that plaintiff be awarded $4,396.00 in statutory damages.

### 2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides in relevant part:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization. See Googies

Luncheonette, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *3 (S.D.N.Y. Dec. 12, 2001).

In this case, Meena's House Café never contracted for the right to broadcast the Event (see Gagliardi Aff. ¶ 6) and, accordingly, was not authorized to intercept, receive or transmit communication of the Event (see Compl. ¶¶ 20-21). In order to display the Event at Meena's House Café, someone connected with the establishment must have engaged in some deliberate act. (See id.) Since the transmission of the Event was electronically coded and the establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id. ¶ 21.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

On the other hand, none of the four willfulness factors described above is present in this case. Plaintiff does not offer evidence that Meena's House Café has engaged in any other pay-per-view theft violations. Moreover, plaintiff's investigator was not charged a cover fee to enter defendant's establishment and the Event was shown on only one television set.

(Charidemou Aff.) Plaintiff provides no evidence that defendant charged a premium for food or beverages during the broadcast of the Event, even though plaintiff does allege that the presence of eighty patrons in the establishment likely increased the establishment's profits from sales of food and beverages. (Pl.'s Mem. at 9.) Finally, plaintiff does not allege that defendant advertised the display of the Event in order to entice customers into the establishment.

In light of the circumstances surrounding the display, I respectfully recommend that plaintiff receive an enhanced damages award of $8,792, or two times the basic statutory damages, for defendant's willful violation of the Communications Act. See, e.g., J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159, 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010) (finding appropriate an award of $9,341.50, or two times the amount of basic statutory damages, for defendant's willful violation); Entm't by J & J Inc. v. Nina's Rest. and Catering, No. 01-CV-5483, 2002 WL 1000286, *3 (S.D.N.Y. May 9, 2002) (awarding an enhancement of two times the damages award for willfulness); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000 in basic statutory damages and $10,000 in enhanced damages); see also Kingvision Pay-Per-View Ltd. v. Olivares, No. 02-CV-6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts").

3. Attorney's Fees and Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii); see also Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996).

In calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007). "A district court's choice of rates is well within its discretion." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) (internal quotations omitted); see also Meehan v. Gristede's Supermarkets, Inc., No. 95-CV-2104, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997); Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115–16 (2d Cir. 1997); Cho, 524 F. Supp. 2d at 206. The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (citing Cruz, 34 F.3d at 1160; Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). In the present case, plaintiff's attorney, Julie Cohen Lonstein, has submitted an affidavit stating that she and her firm, Lonstein Law Office, P.C., expended a total of 8.295 hours (5.825 attorney hours and 2.47 paralegal hours) on this action. (See Lonstein Aff. ¶ 8.) Ms. Lonstein has not submitted documentation to authenticate the number of hours spent, but her affidavit summarizes the work

done and the hours expended.  (Id.)  Courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by the attorneys." David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); see also Cruz, 34 F.3d at 1160 (typed summaries of hours drawn from contemporaneous time records, without submission of actual time records, was sufficient to support attorney's fees application).

Plaintiff's submissions are unremarkable, boilerplate forms.  The amount of time Ms. Lonstein claims to have spent, while not large, is too great for what amounts to cutting and pasting names and writing a few case-specific paragraphs.  Therefore, I respectfully recommend that counsel be compensated for three attorney hours and two paralegal hours.  The hourly rates plaintiff requests — $200 per hour for Ms. Lonstein and $75 per hour for a paralegal — seem reasonable and in line with the rates charged for comparable work in this area.  See, e.g., Rosado, 2005 WL 3018704, at *6 (awarding same hourly rates to this counsel).  I therefore respectfully recommend that plaintiff be awarded attorney's fees of $750 ($600 plus $150).

Plaintiff also seeks reimbursement for costs in the amount of $510, which includes $350 for filing fees and $160 for service of process.  (See Lonstein Aff. ¶ 8.)  The costs for filing fees and service of process are reasonable and I recommend that plaintiff be awarded $510 in costs.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $13,188 in damages and $1,260 in attorney's fees and costs.  Any objection to this Report and

Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Glasser and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      April 22, 2011